REQUESTED BY: Dear Senator:
You have asked our opinion as to the constitutional validity of a proposed amendment to LB 587. Your question is directed particularly to the question of whether the amendment would constitute special legislation. We conclude that if such amendment is adopted, it may be difficult to defend the bill against a constitutional attack based on such grounds. In this discussion we are confining ourselves to the amendment, and are not considering at all LB 587, as originally introduced.
The amendment would strike section 1 of the original bill, and substitute therefor two new sections. Section 1 of the amendment provides:
 "Any natural resources district which contains within its boundaries an unincorporated community located in a flood plain and located in a county in which there is a city of the metropolitan class may construct flood control protection for such community."
The remaining sections of the act, as amended, deal with financing the cost of such projects by special assessments or bond issues. It will not be necessary to discuss those sections herein.
The question of special legislation has been frequently considered by our court, and certain general principles have evolved. It is proper to classify cities by size, and pass legislation applicable only to cities of specified classes, so long as the size of the city has some reasonable relevance to the legislation. It would also be proper to classify counties according to whether they did, or did not, have cities of certain classes within their boundaries, if, again, the size of the city had relevance to the legislation. An example of a permissible type of legislation of this sort is found in Omaha Parking Authority v. City ofOmaha, 163 Neb. 97, 77 N.W.2d 862 (1956), where legislation dealing only with Omaha, as the only city of the metropolitan class, and the County of Douglas, as the only county containing such a city, was sustained as not being special legislation, because the size of the city was germane to the problem to be solved by the legislation, and the class was not frozen, as other cities could grow to the required size. In City of Scottsbluff v. Tiemann, 185 Neb. 256,175 N.W.2d 74 (1970), the court struck down a complicated classification consisting of first class cities having populations of more than 13,000 located in counties having populations of more than 33,000. After holding that the classification was bad because it was closed, since it was to be based on the 1960 census, so that, no new cities could come into the class, the court held that, in any event, the classification was unreasonable, saying:
 ". . . A legislative classification, in order to be valid, must be based upon some reason of public policy, some substantial difference of situation or circumstances, that would naturally suggest the justice or expediency of diverse legislation with respect to the objects to be classified. Classifications for the purpose of legislation must be real and not illusive; they cannot be based on distinctions without a substantial difference. . . ."
Perhaps there is some reason why a natural resources district located in a county containing a city of the metropolitan class should have the powers which would be given to it by the amendment, whereas other natural resources districts should not. This reason, however, is not apparent to us.
On the surface, at least, it appears that this is a special situation involving some particular unincorporated community in Douglas County which wants the benefits of this amendment. It is precisely that sort of situation which ArticleIII, Section 18 of the Nebraska Constitution prohibits. We therefore have grave doubts as to the constitutional validity of the amendment.